**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DAVID M. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-194-CV-W-GAF** |
| | ) | |
| **FEDERAL EXPRESS** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Presently before the Court is Defendant Federal Express Corporation's ("Defendant") Motion to Dismiss for failure to state a claim under Fed R. Civ. P 12(b)(6). (Doc. #23). Defendant moves to dismiss Plaintiff David M. Brown's ("Plaintiff") third cause of action for intentional infliction of emotional distress ("IIED"), arguing that the Plaintiff has failed to set forth facts which would support a finding that Defendant engaged in extreme and outrageous conduct. Id. Plaintiff opposes this Motion, arguing that he has alleged facts that, construed in a light most favorable to him, are sufficient to permit recovery. (Doc. #25). For the reasons set forth below, the Defendant's Motion is GRANTED.

## DISCUSSION

### I.      Facts

Plaintiff, while in the scope of his employment with Defendant, suffered injuries to his left knee on

1

or about January 1, 2000 and January 24, 2000.[1]  As a result of his injuries, Plaintiff and Defendant entered into a written contract Stipulation for Compromise Settlement ("Stipulation") on or about December 2, 2002 at the Division of Workers' Compensation in Kansas City, Jackson County, Missouri.  Plaintiff states that the Defendant contracted to provide future medical care and future related temporary disability under the Missouri Workers Compensation Law.  The Plaintiff alleges that the Stipulation allows the Defendant to control all medical claims by the Plaintiff and requires prior Defendant approval of medical expenses.

On or about August 20, 2003, counsel for Plaintiff made a written demand to Defendant on behalf of the Plaintiff for additional medical treatment for Plaintiff's left knee.  On or about September 8, 2003, Plaintiff's counsel made a second written demand for treatment of Plaintiff's left knee, specifying the medical treatment sought by the Plaintiff.  Plaintiff states that, on multiple occasions, he has made oral and written demands on Defendant for the medical treatment of his left knee and for temporary disability payments.  On October 23, 2003, Defendant offered to settle the issue of future medical expenses for a lump sum payment of $6,758.00.  Plaintiff expects the total cost for the requested procedures will be $58,225.00.

Plaintiff alleges claims for specific performance, breach of contract, and IIED.  In support of his claim for IIED, Plaintiff alleges that, by refusing to provide Plaintiff with the medical treatment Plaintiff claims is necessary, Defendant intended to cause Plaintiff emotional distress or recklessly disregarded the probability that emotional distress would result.  Plaintiff claims that Defendant knew, or should have known, that emotional distress was an obvious consequence of denying his claim for medical treatment, and

---

[1]Facts are derived entirely from Plaintiff's Petition.

that Defendant should have known that Plaintiff was susceptible to emotional distress due to his knee injury. The Plaintiff further claims the Defendant knew or should have known that Plaintiff would be unable to secure gainful employment until such time that he had received the requested medical treatment.

Additionally, Plaintiff alleges that, because the Stipulation gives Defendant the right to control all medical treatment for his knee injury, Defendant is in a position to harm the Plaintiff. Plaintiff claims that, because Defendant agreed by contract to provide Plaintiff with future medical treatment for his knee injury, Defendant's failure to do so amounts to extreme and outrageous conduct. Plaintiff further states that Defendant's refusal to provide the requested medical treatment was intended to coerce Plaintiff into accepting an unreasonable settlement offer, and that Defendant's coercion caused Plaintiff to suffer from severe emotional distress. Finally, Defendant alleges that, as a result of the Defendant's refusal to provide the requested medical treatment and Defendant's attempt to settle the claim for $6,758.00, the Plaintiff has received medical treatment for his emotional distress.

## II.    Legal Standard

A motion to dismiss is the proper method to test the legal sufficiency of the complaint. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). Fed. R. Civ. Pro. 12(b) provides that a cause of action may be dismissed for the failure to state a claim upon which relief may be granted. When considering a motion to dismiss, the court treats all well pled facts as true and grants all reasonable inferences therefrom in favor of the non-moving party. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). However, the court is not required to accept the pleader's own legal conclusions. Id. A motion to dismiss should only be granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

3

### III.    Analysis

The elements of a claim for IIED are: 1. defendant's conduct was extreme and outrageous; 2. defendant acted in an intentional or reckless manner; and 3. defendant's conduct resulted in extreme emotional distress. Wooten v. Pleasant Hope R-VI School Dist., 139 F.Supp.2d 835, 839 (W.D. Mo. 2000); Wilt v. Kansas City Transit Auth., 629 S.W.2d 669, 671 (Mo. Ct. App. 1982). In this case, Defendant argues that the Plaintiff fails to set forth facts which would support a finding that Defendant engaged in extreme and outrageous conduct.

Extreme and outrageous conduct is difficult to define; however, it is clear that the defendant's conduct must be more than simply malicious and intentional. Viehweg v. Vic Tanny Int'l of Mo., Inc., 732 S.W.2d 212, 213 (Mo. Ct. App. 1987). "Mere insults, indignities, inconsiderations or petty oppressions do not rise to the level of outrageous conduct." Wooten, 139 F.Supp.2d at 843. Indeed, Missouri courts have recognized that, in order to meet the definition of extreme and outrageous conduct, the defendant's conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Viehweg, 732 S.W.2d at 213.

Under Missouri law, "it is for the Court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Wilt, 629 S.W.2d at 671. The Court should grant a motion to dismiss if it is not reasonably debatable whether the conduct described in the complaint is shocking or atrocious. See Wooten, 139 F.Supp.2d at 843.

Plaintiff argues that it is reasonably debatable that the Defendant's conduct could be regarded as atrocious and utterly intolerable in a civilized community. (Doc. #25, 27). Although the Plaintiff concedes that a mere breach of contract does not rise to the requisite level of extreme and outrageous conduct, he

4

claims that he has alleged several facts supporting a finding of extreme and outrageous conduct. (Doc. #27). First, Plaintiff alleges that the Defendant "knew" the Plaintiff was "susceptible" to emotional distress because of his medical condition. Id. Plaintiff further alleges that Defendant's offer to settle the claim for $6,758 was intended to coerce him into accepting an unreasonable settlement offer. (Pl.'s Pet.). Finally, Plaintiff argues that, because Defendant was in a position to control and require approval of Plaintiff's medical treatment, the legal relationship between the Plaintiff and the Defendant makes it more probable that the Defendant's conduct could be considered extreme and outrageous. (Doc. #27).

Each of Plaintiff's arguments fail. Plaintiff's allegation that Defendant "knew" that the Defendant was "susceptible" to emotional distress due to his knee injury and his desire for medical treatment is a conclusion which is unsupported by any factual allegations. The allegation that the Defendant knew of the Plaintiff's knee injury does not support the inference that the Defendant therefore "knew" that the Plaintiff was "susceptible" to suffering emotional distress.

The allegation that the Defendant proposed a settlement offer that the Plaintiff believed to be too low is similarly insufficient to support a finding that the Defendant engaged in extreme and outrageous conduct. Even assuming that the Defendant's offer was, in fact, calculated to take advantage of the Plaintiff and coerce him into accepting an unreasonable offer[2], the Plaintiff's IIED claim still cannot survive a motion to dismiss.

In Wilt, the Defendant repeatedly refused to pay the plaintiff on a property damage claim, which

_____

[2]Except to state that Defendant offered to settle the Plaintiff's claim for $6,758.00 and refused to pay the amount demanded by the Plaintiff, the Plaintiff sets forth no allegations of coercive conduct or improper settlement tactics by the Defendant.

5

all parties agreed was owed to the plaintiff, for the purpose of coercing the Plaintiff's aunt to settle her personal injury claim which arose from the same incident. Wilt, 629 S.W.2d at 670. In granting the defendant's motion to dismiss the plaintiff's IIED claim, the Missouri Court of Appeals stated, "assuming plaintiff's allegation that his case was used as 'leverage' by the defendant to settle the aunt's case is correct, this court, while not giving a stamp of approval to such settlement tactics, does not find them to be 'extreme' or 'outrageous.'"[3] Id. This Court agrees with the Missouri Court of Appeals in finding that an allegation of a low settlement offer is insufficient as a matter of law to support a finding that Defendant's conduct was "extreme" and "outrageous."

Plaintiff argues that, because the Defendant was allegedly in a position to control the disbursement of medical expenses, the parties' legal relationship makes it more probable that the Defendant's conduct could be considered outrageous. (Doc. #27). Plaintiff is correct in his assertion that the parties' relationship has a bearing on whether conduct could be considered "extreme" or "outrageous." *See* Boes v. Deschu, 768 S.W.2d 205, 208 (Mo. Ct. App. 1989). However, Fed. R. Civ. P. 12(b)(6) does not allow the Plaintiff to simply point to the nature of the parties' relationship in lieu of pleading facts sufficient to state a claim.

A review of the case law from various jurisdictions demonstrates that the allegations in Plaintiff's Petition cannot support a finding that Defendant engaged in extreme and outrageous conduct, regardless of the nature of the parties' relationship. Numerous courts have found that the mere refusal to pay a

---

[3]Other jurisdictions have dismissed IIED claims on similar facts. For example, Reamsander v. Jaskolski, 462 NE2d 392 (1984) (granting defendant's motion to dismiss and finding its conduct not to be outrageous where insurance company made numerous calls to the plaintiff in an alleged attempt to pressure him to accept the company's settlement offer.)

medical or other claim simply does not reach the level of outrageousness required to state a cause of action for IIED. Jarvis v. Prudential Ins. Co., 448 A.2d 407, 409 (N.H. 1982) (Where Plaintiff alleged bad faith failure of insurance company to pay medical claims, "[D]efendant's conduct would, as a matter of law, fail to meet the definition of "outrageous conduct" set forth in the Restatement of Torts."); Combs v. Ins. Co. Of Illinois, 497 NE2d 503, 509 (Ill. App. 1986) (Where plaintiff alleged that insurance company caused severe emotional distress by refusing to pay homeowner's insurance proceeds, pleadings fell far short of pleading requirements); Davis v. Aetna Cas. & Sur. Co., 314 S.E. 2d 913, 918 (Ga. App. 1984), aff'd in part and rev'd in part on other grounds by Aetna Cas. & Sur. Co. v. Davis, 320 S.E.2d 368 (Ga. 1984) (Insurer's refusal to pay claimant's medical expenses did not rise to the level of outrageousness necessary to state a claim for IIED). Thus, Plaintiff's allegation that Defendant failed to pay Plaintiff's medical expenses does not, as a matter of law, rise to the level of extreme and outrageous conduct necessary to state a claim for IIED.

## CONCLUSION

No basis exists for Plaintiff's cause of action for IIED because he fails to set forth facts that Defendant engaged in extreme and outrageous conduct. Accordingly, Defendant's Motion to Dismiss Plaintiff's third cause of action for IIED is GRANTED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:    September 30, 2005

7